UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VALERIE C. RONCHIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 19 C 3981 |
| ) | |
| CHARLES F. HOOP, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Charles Hoop's Motion for Partial Summary Judgment. For the following reasons, the Court grants the motion in part.

## BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Valerie Ronchin, a French citizen, brings this action against Hoop, her former husband and a U.S. citizen, seeking to enforce an I-864 affidavit of support (the "Affidavit") under Section 213A of the Immigration and Nationality Act, 8 U.S.C. § 1183a ("INA"). Hoop and Ronchin married in July 2010. After their marriage, Hoop petitioned the U.S. Citizen and Immigration Services ("USCIS") for Ronchin to immigrate the U.S. Hoop was required to sign the Affidavit and ensure Ronchin's yearly income was, at a minimum, 125% of the federal poverty guidelines. The

Affidavit was executed in September 2010. Hoop eventually filed for divorce in March 2014.

In May 2014, the Domestic Relations Division of the Circuit Court of Cook County entered an agreed order requiring Hoop to pay Ronchin $4,000 in temporary unallocated support (the "Agreed Support Order"). The Agreed Support Order specified "[t]he temporary unallocated support shall be includable in Valerie's income and deductible by Charles." In March 2016, the Circuit Court entered an order terminating Hoop's obligation to pay unallocated support after Ronchin failed to return from France with the children.

In July 2016, the Circuit Court entered default judgment for dissolution of marriage. Under the default judgment order, Ronchin was "responsible to pay any and all outstanding sums owed to the children's prior school, Lycee Francais, and shall indemnify and hold [Hoop] harmless of any liability thereon." An agreed order entered in June 2017 reasserted this obligation (the "Agreed Dissolution Order"). The Agreed Dissolution Order also entered judgment in the amount of $32,321 against Ronchin and in favor of Hoop. The Illinois Appellate Court affirmed the dissolution proceedings in June 2019. *See In re Marriage of Hoop*, 2019 IL App (1st) 181311-U.

In 2019, Hoop paid $10,000 to Lycee Francais to pay off the outstanding amounts Ronchin owed to the school. On December 31, 2019, Hoop notified Ronchin he waived his right to indemnification for $3,500 of the payment to Lycee Francais. Then, on August 21, 2020, Hoop notified Ronchin he waived his right to indemnification for the

2

remaining $6,500 of the payment to the school. The same day, Hoop notified Ronchin he waived his right to payment of $9,450 of the $32,321 divorce judgment.[1]

Ronchin asserts she is owed: $10,940 for 2014; $12,066 for 2016; $2,506 for 2018; $10,506 for 2019; and $10,633 for 2020. Hoop now moves for partial summary judgment.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the

---

[1] Under the Agreed Dissolution Order, Hoop could not "take any action to collect" the $32,321 divorce judgment "unless and until [Ronchin's] household income exceeds $45,000.00." Dkt. # 45-5, ¶ 5.

3

jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

## DISCUSSION

For background, the INA forbids the admission of immigrants who are likely to become a public charge. 8 U.S.C. § 1182(a)(4). But such immigrants may be admitted if their application is accompanied by a Form I-864 affidavit of support. *Cyrousi v. Kashyap*, 386 F. Supp. 3d 1278, 1282 (C.D. Cal. 2019). "Once executed, the affidavit becomes a contract between the sponsor and the U.S. Government for the benefit of the sponsored immigrant." *Erler v. Erler*, 824 F.3d 1173, 1175 (9th Cir. 2016). Under the terms of the I-864 affidavit, "the sponsor is obligated to provide the sponsored immigrant with whatever support is necessary to maintain the sponsored immigrant at an annual income that is at least 125% of the federal poverty level annual guideline." *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008). A divorce judgment does not terminate this obligation. *Erler*, 824 F.3d at 1177.

Hoop argues he is entitled to partial summary judgment because Ronchin's claims for 2014, 2016, and 2018 are barred by res judicata. Hoop also argues that Ronchin's income each year is higher than she alleges. We address each argument in turn.

4

I. **Res Judicata**

Hoop first argues Ronchin's claims for 2014, 2016, and 2018 are precluded by res judicata. Hoop asserts Ronchin should have raised her claims for breaches of the Affidavit in the divorce proceedings.

"There are three requirements for res judicata in Illinois: (1) a final judgment on the merits entered in the first lawsuit by a court of competent jurisdiction; (2) an identity of causes of action exists; (3) the parties or their privies are identical in both lawsuits." *Doherty v. Fed. Deposit Ins. Corp.*, 932 F.3d 978, 983 (7th Cir. 2019) (cleaned up). Res judicata "extends not only to what was actually decided in the original action, but also to matters which *could have been decided* in that suit." *Id.* (emphasis in original).

Here, the first two elements are unquestionably met: the parties are identical, and the default judgment is a judgment on the merits under Illinois law. *Hous. Auth. For LaSalle Cnty. v. Young Men's Christian Assoc. of Ottawa*, 101 Ill. 2d 246, 255 (1984). Thus, the only question is if there is an identity of the causes of action. "Under Illinois's 'transactional' test, 'separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.'" *White v. Ill. State Police*, 2021 WL 4568054, at *5 (7th Cir. 2021) (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998)).

Generally, actions to enforce an I-864 Affidavit may be brought in state court. *See In re Marriage of Bychina*, 2021 IL App (2d) 200303, ¶ 35 ("State courts have

jurisdiction to hear claims seeking to enforce Form I-864 obligations."). But, as the Seventh Circuit noted, the right to support conferred by federal law through an I-864 affidavit exists separate from rights available under state divorce law. *Liu v. Mund*, 686 F.3d 418, 419–20; *see also Bychina*, 2021 IL App (2d) 200303, ¶ 37 ("Respondent's obligations under the Affidavit of Support are separate from any obligations, such as maintenance, he may have under Illinois divorce law.").

The claims, thus, involve different causes of action and different operative facts. The divorce action adjudicates the equitable rights between the parties based on their marriage, while a breach of I-864 affidavit action solely focuses on whether a sponsor maintained a sponsored immigrant's income at 125% of the federal poverty guidelines. Indeed, if a spousal support award is insufficient to meet the requirements of an I-864 affidavit, the sponsor remains liable for the amount necessary to reach the required level. *Bychina*, 2021 IL App (2d) 200303, ¶ 37. Additionally, the "state court made no mention of the I-864 in its dissolution and maintenance orders and did not adjudicate 'an action for breach of [Hoop's] I-864 obligation.'" *Grabois v. Grabois*, 737 F. App'x 338, 339 (9th Cir. 2018). Therefore, Ronchin's claims are not precluded by res judicata. *See id.* (I-864 claims were not barred by res judicata or the *Rooker-Feldman* doctrine after state divorce proceedings); *see also In re Marriage of Khan*, 332 P.3d 1016, 1020 (Wash. Ct. App. 2014) ("Because we hold that an I-864 obligation is separate from any rights or obligations imposed by marriage, [the sponsored immigrant] will not be precluded from asserting her I-864 contract right in a separate action.").

6

## II. Ronchin's Income

Next, Hoop asserts that Ronchin's income is higher than she alleges for 2014, 2016, 2019, and 2020. Ronchin bears the burden of proving her income fell below 125% of the federal poverty guidelines in the relevant years. *Belevich v. Thomas*, 2019 WL 2550023, at *5 (N.D. Ala. 2019). Hoop's support obligation is the difference between Ronchin's income and the guidelines. *Erler*, 824 F.3d at 1171.

Neither the INA, the regulations, nor the Affidavit define "income" for the sponsored immigrant. *Belevich*, 2019 WL 2550023, at *5 (citing 8 U.S.C. § 1183a; 8 C.F.R. § 213a.1(2)). "In the absence of a statutory definition, courts have generally interpreted a sponsored immigrant's 'income' expansively, including the immigrant's government benefits, educational grants, and alimony, if any." *Id.*

Hoop says he met his support obligations under the Affidavit in 2014 and 2016 by paying the unallocated support under the Agreed Support Order. And Hoop further asserts the waivers of indemnification by him to Ronchin should be imputed as income to Ronchin in 2019 and 2020.[2] We address each of these arguments individually.

### a. 2014 and 2016

The parties disagree about whether unallocated support is income for purposes of the Affidavit. Unallocated support is a special treatment of post-marital support as

---

[2] Hoop also "submits," unsupported and in a footnote, that Ronchin should be equitably estopped from receiving financial support for time she was out of the country in 2016. However, arguments raised only in footnotes are waived. *See Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived." (citing *Goren v. New Vision Int'l*, 156 F.3d 721, 726 n.2 (7th Cir. 1998)).

7

an incentive for federal income tax purposes; since child support was not tax deductible but alimony was, combining child support and alimony into "unallocated support" allowed for the full amount to be treated as alimony and tax deductible to the payor.[3] *See In re Marriage of Gleason*, 266 Ill. App. 3d 467, 468 (4th Dist. 1994). Illinois law, though, still recognizes unallocated support as both child support and maintenance. *In re Marriage of Kincaid*, 2012 IL App (3d) 110511, ¶ 25. The distinction is important here because alimony is income under an I-864 affidavit of support, *Belevich*, 2019 WL 2550023, at *5, while child support is not, *Younis v. Farooqi*, 597 F. Supp. 2d 552, 555 (D. Md. 2009).

Hoop asserts the unallocated support paid in 2014 and 2016 is income to Ronchin because it was income for federal income tax purposes and, at least for 2014, Ronchin reported the unallocated support as income on her tax return. Ronchin, though, insists the unallocated support is entirely child support, which is not income to her. She therefore requests further discovery to know Hoop's income for 2014 and 2016. Ronchin claims this will show $4,000 is less than 28% of Hoop's income and, thus, the Court should treat the whole amount as child support. *See In re Marriage of Durdov*, 2021 IL App (1st) 3367538, ¶ 5 (noting that, under the version of the statute in effect at the time, a noncustodial parent of two children must pay 28% of his net income as child support).

---

[3] The Court notes that the Tax Cuts and Jobs Act of 2017 changed the tax treatment of alimony payments for support orders issued after December 31, 2018. *See Siegel v. Comm'r*, 2019 WL 643186, at *1 n.1 (U.S.T.C. 2019).

We agree with Hoop that the full unallocated support should be treated as income to Ronchin. Most significantly, the Agreed Support Order specified the unallocated support was income to Ronchin. And while Ronchin wants to unravel and break down the payments to determine how much child support Hoop was required to pay, the Agreed Support Order was not required to follow the guidelines for calculation of maintenance and child support under the Illinois Marriage and Dissolution of Marriage Act. *See In re Marriage of Steadman*, 283 Ill. App. 3d 703, 708 (1996) (noting that a trial court need not follow the statutory guidelines when approving an agreed support order). Additionally, the Agreed Support Order specified that the payments would end when either party died. Under Illinois law, maintenance obligations terminate on the death of either party, while child support obligations do not. 750 ILCS § 5/510(c) ("the obligation to pay future maintenance is terminated upon the death of either party"); 750 ILCS § 5/510(d) ("An existing obligation to pay for support [of a child] or educational expenses, or both, is not terminated by the death of a parent.").

Based on these facts, we conclude that the unallocated support should be treated as alimony and is income to Ronchin. *Cf. Kean v. Comm'r*, 407 F.3d 186, 191–92 (3d Cir. 2005) (finding unallocated support was taxable alimony because it terminated on death). It is undisputed that the unallocated support paid by Hoop exceeded 125% of the federal poverty guidelines. Hoop is therefore entitled to summary judgment on Ronchin's claims for 2014 and 2016.

### b. 2019 and 2020

Next, Hoop seeks to adjust Ronchin's income for 2019 and 2020 because of the waivers of indemnification. Hoop asserts the waivers are income to Ronchin because the Internal Revenue Code includes discharge of indebtedness as taxable income. *See* I.R.C. § 61(a)(11). Ronchin contends that she did not ask for the waivers of indemnification and attributing them as income would be contrary to the purposes of the Affidavit and INA.

We believe Hoop's waivers constitute income to Ms. Ronchin. We find the reasoning for considering the discharge of indebtedness as taxable income instructive. "The general theory is that to the extent that a taxpayer has been released from indebtedness, he has realized an accession to income because the cancellation effects a freeing of assets previously offset by the liability arising from such indebtedness." *Cozzi v. Comm'r*, 88 T.C. 435, 445 (1987). In other words, a person who has a debt forgiven is free to use the amount she no longer owes for something else.

Here, Ronchin was relieved of her obligation to pay Hoop $19,450. Thus, she is free to use that money as she pleases. Essentially, Hoop paid Ronchin $19,450 and she used the money to pay off her debts, whether due and owing or not. This clearly furthers the Affidavit's intent to keep Ronchin from becoming a public charge.

Finally, Ronchin appears to argue the waivers are *de minimis* gifts and are not income. She relies on *Yoonis*, where the court found occasional payments of between $20 to $200 made by family and friends to the immigrant were *de minimis* and therefore

not income. 597 F. Supp. 2d at 555–56. But Ronchin's reliance on *Yoonis* is inapposite. Here, unlike in *Yoonis*, the sponsor—Hoop—made the payments. And the amount of the payments greatly differed from *Yoonis*—by thousands of dollars. Thus, the payments were not *de minimis* and must be included as income to Ronchin.

Therefore, the waivers are income to Ronchin for 2019 and 2020. It is undisputed that Ronchin's income was still below the poverty guidelines for those years, but her income must be adjusted accordingly.

## **CONCLUSION**

For the reasons mentioned above, the Court grants-in-part Hoop's Motion for Partial Summary Judgment (Dkt. # 43). Telephonic status is set for 10/28/2021 at 10:50 a.m. It is so ordered.

Dated: 10/21/2021

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

11